United States Courts
Southern
FILED

MAR 1 1 2014

David J. Bra... Clerk of ...

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### GALVESTON DIVISION

SEMINOLE PIPELINE COMPANY, LLC
Plaintiff,


v.                                            CAUSE NO.   3:14-cv-00050


ADRIENE SIBLEY, et. al
Defendant,

_____


## SIBLEY'S  AMENDED ANSWER AND COUNTER CLAIM


Defendant,   Adriene Sibley ("Sibley") waives service by citation and answers the Complaint of the Plaintiff, Seminole Pipeline Company, LLC ("Seminole") as follows:

1.      Deny the allegation set forth in paragraph "1" of the Complaint.

2.      Admit the allegation set forth in paragraph "2" of the Complaint

3.     Deny the allegation set forth in paragraph "3" of the Complaint, Adriene   Sibley is the Defendant's legal name.

4.     Deny the allegation set forth in paragraph "10" of the Complaint. Venue is in   the United States District Court, Galveston Division.

5.   Deny the allegation set forth in paragraph "11" of the Complaint. Jurisdiction lies in the United States District Court.

6.      Admit  the  allegation  set  forth  in  paragraph  "12"  of  the Complaint, except deny that the easement provided the Plaintiff the right, privilege and easement to utilized the Defendants' property outside of the thirty feet.

7.     Admit the allegation set forth in paragraph "13" of the Complaint stating  Adriene  Sibley,  Johnel  Lewis,  Dushay  Lewis,  Winston  Rossow,  and Reginald Rossow, Sr. are successors, assigns and heirs to the Grantors, except deny that  Donyll Lewis and Lamont Lewis are  successors, assign and heirs to the Grantors.

8.     Deny knowledge or information sufficient to form a belief as to the truth of the allegation set forth in the first sentence of paragraph "14" of the Complaint.  Deny knowledge or information sufficient to form a belief as to the truth of the allegation set forth that, "On the same day, while Seminole was in the process of completing it's maintenance and repair operation" in paragraph "14". Admit that Enterprise and/or Seminole and     Sibley were in negotiations regarding

payment for their use of the Defendants' property for workspace in paragraph "14". Plaintiff offered Sibley $10,000 and Sibley stated the Defendants may accept $20,000 for work space on January 8, 2014.   Admit that Sibley changed counter offer to $120,000 on January 10, 2014 due possible contamination of top soil. Deny that Sibley threatened Seminole and/or Enterprise with a temporary restraining order ("TRO").  Admit that Sibley notified Plaintiff  that if an agreement could not be reached she would seek a TRO.   Admit that a new lock was installed on the gate on January 9, 2014.  Deny that the new lock was an attempt to deny Seminole access to it's Easement.   Admit that representatives from the Plaintiff gave the Defendants' permission to install a new lock. Seminole accessed and performed work on the property after January 9, 2014.   Deny knowledge or information to form a belief as to the truth of the allegations set forth in the fourth sentence of paragraph "14" except Defendant deny that Seminole had no choice but to cease further repair and maintenance operations and demobilize. Deny that Seminole has tried to work out an amicable agreement with the Defendants in good faith.

9.      Deny the allegation in the first sentence of paragraph "16".   Deny that Seminole has been ready, willing and able to enter upon the Easement to perform the necessary repair and maintenance operation.  Deny that Defendants breached or repudiated the easement.   Deny that Defendants denied Seminole's

3

valuable property rights.   Deny that Seminole was unable to make entry upon the Easement.   Admit that Patton's affidavit never stated that the Defendants breached or repudiated the easement, that the Defendants denied Seminole's valuable property rights, or that Seminole was unable to make entry upon the Easement.

10.      Deny the allegations in paragraph "17" of the Complaint.

11.      Deny that the Defendants have denied Seminole access to it's easement. Deny that Plaintiff stipulated or suffered irreparable harm.   Admit that the Plaintiff's harm was financial harm and not irreparable harm.   Deny the remaining allegations in paragraph "18" of the Complaint.

12.      Deny the allegations in paragraph "19" of the Complaint.

13.      Deny the allegations in paragraph "20" of the Complaint.

14.      Deny the allegations in paragraph "21" of the Complaint.

15.      Deny the allegations in paragraph "22" of the Complaint.

16.      Except as expressly admitted, Defendant denies all of the allegations of the Complaint.

Further, as separate Affirmative Defenses, to each and every claim for relief of the complaint, the answering Defendant is informed and believes, and on information and belief alleges as follows:

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

4

17.     The Complaint fails to state a claim against the Defendants for which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

18.     Any recovery or relief to which Plaintiff may have been entitled (if any) is barred, in whole or in part, under the doctrine of unclean hands.

## THIRD AFFIRMATIVE DEFENSE

19.     The Contract is void because the property description  in the easement violates the Statute of Frauds therefore there is no valid contract.

## FOURTH AFFIRMATIVE DEFENSE

20.     If Plaintiff suffered any loss, it is as a result (in whole or in part) of their own culpable conduct.

## FIFTH AFFIRMATIVE DEFENSE

21.     Defendants' alleged conduct was not the proximate cause of Plaintiff's alleged damages.

## SIXTH AFFIRMATIVE DEFENSE

22.     Plaintiff's recovery pursuant to the Complaint, and each purported cause of action alleged therein, is barred in whole or in part as a violation of the Defendants' civil rights.

## COUNTERCLAIMS

Adriene Sibley ("Sibley"), as for counterclaims against Seminole allege as follows:

### NATURE OF ACTION

23.    This is a civil action for damages under 42 U.S.C. 1983, 42 U.S.C. 1985, and the common laws of the State of Texas arising from Seminole using and seizing the Counter-Plaintiffs' property for a repair and maintenance operation ("operation") and for Seminole constructing and using a second pipeline on the Counter-Plaintiffs' property in violation a contract, without consent or compensation.

24.    From on or about December 26, 2013 to February 17, 2014, Seminole, individually and in concert, conspired to use and seize the Counter-Plaintiffs' property in violation a contract, without consent, compensation, notice, hearing or trial for Seminole's operation.   Seminole knowingly and intentionally breached the parties' contract upon using and seizing the Counter-Plaintiffs' property.

25.    From on or about 2010, Seminole constructed and is using a

6

pipeline on the Counter-Plaintiffs' property without a contract, consent, compensation or condemnation of the property. Seminole or it's assigns or successors knowingly and intentionally breached the parties contract and violated the Counter-Plaintiffs' due process rights upon constructing a pipeline on the property and using and seizing the property for Seminole's purposes.

26. Sibley notified the Counter-Defendant that the use of her property was a violation of the contract ("easement") and that they did not have consent to use and seize her property for their operation and that any use was breach of contract and trespassing.

27. Representative, Shelly Patton ("Patton") admitted that the Counter-Defendant had in fact breach the contract or easement and that Seminole could not complete their operation without the use of Sibley's property therefore the parties and Patton attempted to negotiate compensation for the breach. When the parties could not reach an agreement on compensation for the breach of contract and Sibley restricted the Counter-Defendants use of her property, Seminole conspired to filed a meritless Breach of Contract and Injunction complaint requesting a Temporary Restraining Order ("TRO") based on a false allegation that the Counter-Plaintiffs denied Seminole access to the easement and the void TRO that allowed Seminole to use and seize Sibley property for Seminole's operation without consent, compensation, notice, hearing or trial in

deliberate   indifference   to   Counter-Plaintiffs'   constitutional   rights   and Counter-Defendants responsibilities to the Court.

Parties

28.    Counterclaim-Plaintiff,   Adriene Sibley is an individual residing in the State of Texas.

29.    Counterclaim-Defendant,   Seminole Pipeline Company, LLC is a Delaware Limited Liability Company with it's principal office in the state of Oklahoma.

Venue

30.    Venue is in the Galveston Division for the Southern District of Texas.

Jurisdiction

31.    This Court has jurisdiction pursuant to diversity of citizenship and on a federal question.    28 U.S.C. 1332, 1441, 1367

32.        This  Court  has  supplemental  jurisdiction  for  the  state counterclaims.   28 U.S.C. 1367.

Background

33.    In 1981, Ora Mae Kennedy, Margie Belle Lewis, Minnie Mae Helm, Robert Rossow, Ella Louise Dorsey, Herman Edwards and William Moore granted Seminole Pipeline Company   ("Seminole") an easement for a thirty foot

8

(30') right-a-way on the property located :

> All that part of a 16 acre tract of land South and West of County Road B400, being part of the Stephen F. Austin 7-1/4 League Grant, Abstract 20; said 16 acre tract of land being further described in deed recorded at Vol. 264, page 1, Brazoria County, Texas

The easement was   restricted to one 14 inch pipe only.

34.     Adriene Sibley is a successor, assign and heir to the Grantors in and to the property subject to the Easements. (the "Property")

35.     Enterprise and/or Seminole started an operation that they alleged was a repair and maintenance operation ("operation") on or about December 26, 2013 that required the use of the Counter-Plaintiffs' property outside of the Easement for workspace.

36.     Enterprise and/or Seminole began using the Counter-Plaintiffs' property for workspace without   consent or compensation and in violation of   the easement on or about December 26, 2013.

37.     Sibley   contacted the Counter-Defendant on January 2, 2014 regarding the unauthorized use of the Counter-Plaintiffs' property.   Sibley and Seminole, represented by Shelly Patton ("Patton") had a meeting on the Property on January 8, 2014 regarding the unauthorized use of the   property.   Patton admitted that the Seminole was in violation of the easement (the "Contract"), that the   Seminole   could   not   complete   the   operation   without   using   the

9

Counter-Plaintiffs' property and apologized and offered compensation for the use of their property for workspace to complete the Seminole's operation.

38.    Patton was advised on January 8, 2014 if an agreement could not be reached by 5 p.m. regarding compensation for utilizing the Counter-Plaintiffs' property ("workspace") then a Temporary Restraining Order ("TRO") would be requested on January 9, 2014. Patton offered the Defendants $10,000 for workspace on January 8, 2014 and Sibley stated that $20,000 may be accepted.   There was a  dispute as to  whether the operation was repair and maintenance or a new project.   The operation required the release and burning of a substance defined as a hazardous liquid.    Due to possible top soil contamination, Sibley notified Patton on January 10, 2014 that $120,000 was requested and if an agreement could not be reached, a TRO would be requested on January 13, 2014. Patton rejected Sibley's compensation request.

39.  Seminole  continued their operation after January 10, 2013, Sibley did not seek a TRO on January 13, 2014 and negotiations continued for compensation for the use of the property by Seminole.   Sibley notified the Counter-Defendant that they did not have  consent to use the  property for "workspace" for Seminole's operation and requested compensation from the Counter-Defendant for leasing the property at a rate of .025 per ft. for  70,000 sq. ft. per day.   Seminole's continued use of the Counter-Plaintiffs' property after

notification was an   implied contract to compensate them at the requested rate of .025 per ft. for   70,000 sq. ft. per day until the end of the operation.

40.     Sibley informed Patton, Mr. Gilbert and Mr. Freeman in writing that the Counter-Plaintiffs were not denying   Seminole access to the easement and that   Seminole was not permitted to use the Counter-Plaintiffs' property to complete Seminole's operation without consent and compensation. and such use was trespassing.

41.     Patton's affidavit admitted that Seminole accessed the easement after Sibley's compensation request and the installation of the new lock. Furthermore, Seminole removed the new lock and accessed the easement.

42.     A complaint for Breach of Contract and an Injunction was filed by Seminole and Seminole requested a TRO.   Patton's affidavit stated the Seminole made the decision to cease further repair and maintenance operations and to demobilize to avoid civil litigation by the Counter-Plaintiffs. Patton's affidavit did not state that the Counter-Plaintiffs denied Seminole access to the easement.

43.     According to Patton's affidavit, the Counter-Plaintiffs asserting their legal rights in a court of law, not accepting Seminole's compensation offer regarding the use of the   property and not entering into an amicable agreement that permitted Seminole to use the   property for the operation was   the Counter-Plaintiffs interfering with Seminole's operation.

11

44.     Seminole stated that "the Defendants were denying them access to their easement" which was a false statement not supported by Patton's affidavit or the facts and in bad faith to support a cause of action for Breach of Contract to obtain a TRO so   Seminole could utilized or seized the Counter-Plaintiffs' property without consent or compensation and   in violation of their civil rights.

45.     Seminole was not performing an operation on the easement on February 6, 2014 and Patton's affidavit confirmed this fact.   Furthermore, the Seminole's complaint admitted that the entry upon the Counter-Plaintiffs' property to complete Seminole's operation would be possibly breaching the peace or trespassing on February 6, 2014.

46.     Seminole obtained an ex parte TRO on February 6, 2014.   The TRO was issued by Judge Jeremy Warren, Brazoria County Court at Law #3, Angleton, Texas.

47.     The status quo on February 6, 2014 was that Seminole was not performing an operation on the easement and that the Counter-Plaintiffs were prohibiting Seminole from utilizing their property without an agreement or compensation therefore the TRO did not preserve the status quo.

48.     The TRO changed the status quo and granted the same relief that Seminole   requested for the Temporary Injunction therefore the TRO was a temporary injunction without notice and a hearing and a violation of the

Counter-Plaintiffs' due process rights.

49.   The purpose of a temporary injunction is to preserve the status quo until a trial on the merits. The temporary injunction requested the same relief as requested for the permanent injunction therefore the TRO and temporary injunction would be a permanent injunction without a trial and a violation of the Counter-Plaintiffs due process rights.  Seminole started their operation on the easement on February 8, 2014 and completed the operation by February 18, 2014 therefore Seminole obtained all the relief it desired before an evidentiary hearing on the temporary injunction took place or before a trial on the merits which was a violation of the Defendants' civil rights.

50.   The Brazoria County Clerk informed Sibley that the Citations for the TRO and Complaint was not pick-up until on or about February 14, 2014. Presumably, the Seminole  had no intention of serving the Counter-Plaintiffs with the TRO or citation.

51.   Seminole employed Angleton Police Officers as security for the Defendants' property.  The Officers  stated on tape that the representatives of Seminole informed them to restrict the Counter-Plaintiffs access to the entire 16 acres of their property therefore the Officers did not permit the Counter-Plaintiffs to enter upon the entire 16 acre tract of property and the officers threatened the Counter-Plaintiffs with detention and arrest  if they entered upon the property.

13

52.     Pursuant to the Texas Railroad Commission, Seminole permitted a second 12.75 inch pipeline under T-4 permit #08309 to be constructed on the Counter-Plaintiffs' property and Seminole's easement specified that only one 14 inch pipeline can be constructed on the property.

53.     Sibley requested information on the pipeline and a copy of the easement that was executed by the Counter-Plaintiffs for the pipeline from Patton. Patton did not deny that there was a pipeline.     Sibley requested information on the pipeline and a copy of the easement   for the pipeline from Mr. Freeman.  Mr. Freeman was provided with a copy of the Texas Railroad Commission ("TRC") records which included the map of the pipeline and the TRC statement that the pipeline was active.   Mr. Freeman did not deny that the pipeline existed.

53.     Throughout this pleading, each of the causes of action asserted by Sibley are pled in the alternative, such that the allegations under one cause of action do no preclude or in any way prejudice the allegations made under a separate cause of action.

## FIRST COUNTERCLAIM

## COUNT   I.     BREACH OF CONTRACT

54.     Repeat and reallege each of the allegations contained in Paragraphs 1 through 53 as if fully contained herein.

55.     The Counter-Plaintiffs and Seminole have a valid contract executed

14

in 1981 which is an pipeline easement.  The Counter-Plaintiff duly performed or satisfied all conditions, promises and obligation required to be performed or satisfied in accordance with the terms and conditions of the agreement.

56.    The Easement restricted Seminole to a thirty foot (30') easement for only one 14 inch pipeline and did not provided Seminole with authority to use the Counter-Plaintiffs' property for workspace outside of the thirty foot (30') easement to complete any repair and maintenance operations.

57.    A second 12.75 inch pipeline under T-4 permit #08309 has been constructed on the  property without consent or compensation and the second pipeline is a breach of the easement.

58.    Seminole utilized the Counter-Plaintiffs' property from on or about December 26 until January 12, 2014 and from on or about February 8, 2014 until February 17, 2014 for workspace without consent and compensation which is a breach of the easement.

59.    Counter-Plaintiff has damages of $4000 per month for unpaid lease of the  property for the pipeline under T-4 permit #08309 and  for $1750 per day for violation of the easement for the operation.

60.    By reason of the foregoing, said Counter-Plaintiff have been damaged in the amount to be determined at trial but at least $140,000 and in such further amounts as may be proven at trial.

15

## SECOND   COUNTERCLAIM

## COUNT   II.   ABUSE OF PROCESS

61.    Repeat and reallege each of the allegations contained in paragraph 1 through 60 as if fully contained herein.

62.    Seminole filed a civil action on February 6, 2014, seeking damages and injunctive relief for Breach of Contract.  Seminole alleged that the Counter-Plaintiffs breached the contract by refusing to allow the Seminole access to the easement to complete a repair and maintenance operation ("operation").

63.    Patton's affidavit and Seminole's complaint   stated that Seminole decided to cease operations and demobilize off the easement to prevent civil litigation by the Defendants and that Seminole was not utilizing the easement or the Defendants' property on February 6, 2014.

64.    Seminole specified that they required the use of the Defendants' property to complete their operation and the negotiations for compensation for the use of the Defendants property had been unsuccessful.

65.    Seminole used process against Counter-Plaintiff when Seminole initiated this lawsuit and obtained a TRO against the Defendant.

66.    On information, belief, Seminole's complaint and evidence,

16

Seminole did not file this suit primarily to seek redress against Counter-Plaintiff for harm that they allegedly caused.

67.   Seminole filed this suit primarily to advance ulterior purposes.   On information and belief, these ulterior purposes include, but may not be limited to:

- To prevent the Counter-Plaintiff from requesting an adequate remedy at law for Seminole's illegal and unconstitutional use and seizure of the Counter-Plaintiffs' property.

- To unlawfully use or seize the Counter-Plaintiffs' property to complete Seminole's operation without the required consent and   compensation.

-   To be able to use   or seize the Counter-Plaintiffs' property at anytime   in   the   future   without   consent   from   or   compensation   to   the Counter-Plaintiffs.

68.   To advance Seminole's ulterior purpose, Seminole abused pleading requirements by making false statements in the pleading, filing a frivolous lawsuit, avoided an adequate remedy at law, obtained a TRO that requested the same relief that the Seminole requested in the temporary and permanent injunction to avoid a trial on the merits and   engaged in fraud upon the court.

70.   Counter-Plaintiff reserve the right to further identify other ulterior purposes after conducting discovery.

71.      By reason of the foregoing, said Counter-Plaintiff have been

damaged in the amount to be determined at trial but at least $80,000   and in such further amounts as may be proven at trial.

### THIRD COUNTERCLAIM

### COUNT III.   TRESPASSING

72.     Repeat and reallege each of the allegations contained in Paragraphs 1 through 71 as if fully contained herein.

73.     Sibley owns an interest in the property located on County Road 400.

74.     Seminole has a thirty foot (30') pipeline easement on the Counter-Plaintiffs' property.   Seminole entered and utilized the property outside of the thirty foot (30').   Counter-Plaintiff notified Seminole that the entry upon and utilization of their property for Seminole's operation was without consent and trespassing.

75.     Seminole's entry upon the property was physical, intentional and voluntary.   Seminole admitted in pleading to a possible breach of peace or trespass.

76.     Seminole was notified of a lease rate for the Seminole's use of the property   without consent at a rate $1750 per day.   Seminole continued to trespass upon and use the property   after notification therefore an implied agreement existed.

77.     By the reason of the foregoing, said Counter-Plaintiffs have been damaged in the amount to be determined at trial but at least $43,000 plus at least $120,000 in punitive damages and in such further amounts as may be proven at trial.

## FOURTH  COUNTERCLAIM

### COUNT  IV.  CONSPIRACY  IN VIOLATION OF
### 42 U.S.C. 1983, 1985

78.     Repeat and reallege each of the allegations contained in Paragraphs 1 through 77 as if fully contained herein.

79.     Seminole, Mr. James Freeman, Mr, Thomas Zabel, Mr. John Gilbert and the Honorable Jeremy Warren are "persons" as that term is used in the text of 42 U.S.C. 1983, 1985.

80.     Under the color of law, Seminole, Mr .James Freeman, Mr. Thomas Zabel, Mr. John Gilbert ("the parties") and Judge Jeremy Warren conspired and entered into express and/or implied agreements, understandings, or meeting of the minds among themselves to deprive Counter-Plaintiffs of their constitutional rights by filing a frivolous Breach of Contract and Injunction complaint in Brazoria County, Texas  on February 6, 2014 which Seminole knew was not supported by the evidence.

81.    Seminole, Mr. James Freeman, Mr. Thomas Zabel. Mr. John Gilbert, and Judge Jeremy Warren willfully participated in this illegal objective by various means with the intent to further the purpose of the conspiracy, including for example:

- TRO based on an alleged threat and installation of a new lock that a occurred  approximate 27 days prior when the parties have actual knowledge that the law dictates that a TRO or Injunction cannot be based on a threat or past wrong.

- TRO when Patton's affidavit and the complaint stated that Seminole made the decision to cease operations and demobilize to avoid civil litigation by the Counter-Plaintiffs.

- TRO when  Seminole had access to the easement during the compensation negotiations and after the new lock was installed.

- TRO that changed the status quo.  Seminole's pleadings stated that Seminole was not conducting repair and maintenance operations on the easement on the  property on February 6, 2014.

- TRO that is void pursuant to Federal and Texas law.

- TRO that obtained the same relief request by the temporary and permanent injunction therefore Seminole obtained all the it's requested relief with the TRO.

20

- TRO   permitted Seminole to enter upon the Counter-Plaintiffs' property, restrain their liberty, deprive them of their civil rights, deprive them of their freedom of speech regarding their property rights and use and seize their property without notice, a hearing, trial, consent, or compensation in violation of the First and   Fourteenth   Amendment of the United States Constitution.

83.   By the reason of the foregoing, the Counter-Plaintiffs have been damaged in the amount to be determined at trial, but at least $100,000 and any such other amounts that can be proven at trial.

## FIFTH   COUNTERCLAIM

### COUNT V.   CONSPIRACY IN VIOLATION OF OF 42 U.S.C. 1983, 1985

84.   Repeat and reallege each of the allegations contained in paragraphs 1 through 83.

85.   Seminole and the City of Angleton Police Officers are "person" as that term is used in the text of 42 U.S.C. 1983, 1985.

86.   Under color of law, Seminole and the Officers conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves to deprive the Counter-Plaintiffs of access to their 16 acre tract of land.  The Counter-Plaintiffs were detained, threatened with arrest, identified, checked for warrants, harassed, embarrassed, intimidated and instructed

not to enter their property pursuant to Seminole's instruction in violation of the Defendants' civil rights or the Fourteenth Amendment of the United States Constitution.

87.   By the reason of the foregoing, Counter-Plaintiffs have been damaged in the amount to be determined at trial, but at least $100,000 and an such further amounts that can be proven at trial.

<u>SIXTH   COUNTERCLAIM</u>

**COUNT   VI.   ATTORNEY FEES UNDER 42 U.S.C. 1988**

88.   Repeat and reallege each of the allegations contained in Paragraphs 1 through   87 as if fully contained herein.

89.   Civil Rights Attorney Fee Award Act permits attorney fees for pro se litigants in civil rights actions.

90.   By the reason of the foregoing, said Counter-Plaintiff have been damaged in the amount to be determined by the Court for attorney expenses but at least a rate of $4 per word for all court filing and in such further amounts as may be proven to the Court for defending this frivolous action.

**<u>PRAYER</u>**

**WHEREFORE,** Counter-Plaintiff prays for judgment against the Seminole for :

(a) actual damages incurred;

(b) awarding to Counter-Plaintiff the costs and disbursements of this action;

(c) awarding   attorney fees;

(d) such punitive damages as the Court sees fit;

(e) dismissing the Complaint in its entirety;   and

(g) to such other and further relief; at law or in equity, general or special, to which

Counter-Plaintiff may be entitled.

Date:   March 8, 2014.


Respectfully submitted


Adriene Sibley
4808 Fairmont Pkwy
Pasadena, Texas   77505
832-420-2071
sibleyadriene@yahoo.com

**VERTIFICATION**

STATE OF TEXAS

COUNTY OF HARRIS


BEFORE ME, the undersigned notary, on this day personally appeared ADRIENE SIBLEY,
affiant, a person whose identity have been verified.   After I administered an oath to affiant, affiant
testified:

> "My name is ADRIENE SIBLEY, I am of sound mind, over
> the   age of   21 years, capable  of making   this   affidavit, and
> personally   acquainted   with the   facts stated herein. I am the
> defendant/counter-plaintiff  in the Amended Answer and
> Counterclaim.   The   facts   in this affidavit   are within my personal
> knowledge and are true   and correct.

> " I am a Pro Se.   All   the documents included with and statements
> made in   the Amended   Answer and Complaint are true and
> correct copies and are within my personal knowledge and are
> true   and correct."

FURTHER, AFFIANT SAYETH NOT.




By _Adriene Sibley_
ADRIENE SIBLEY

SUBSCRIBED   AND   SWORN   TO   before   me by   ADRIENE SIBLEY   on   this   the
_11_ day of   March, 2014.


_____
NOTARY PUBLIC in and for the

STATE OF TEXAS

> **LISA BAKER**
> Notary Public, State of Texas
> My Commission Expires
> **July 02, 2016**

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the above and foregoing Amended Answer and Counterclaim was served by certified mail, return receipt requested, on   March 11, 2014, upon the following:

James Freeman
Thomas Zabel
420 Heights Blvd
Houston,Texas 77007
713-802-9117
713-802-9114 (Fax)
ATTORNEY FOR PLAINTIFF

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED    7012 2210 0000 3355 1855

Seminole Pipeline Company, LLC
CT Corporation System
1999 Bryan St. Suite 900
Dallas, Texas   75201-3136

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED   7012 2210 0000 3355 1848

Adriene Sibley